IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

_____

| | | |
|---|---|---|
| RICHARD JAMES JOHNSON, PRO SE, § | | |
| TDCJ-CID #1005689, § | | |
| Previous TDCJ-CID #616683, § | | |
| Previous TDCJ-CID #581721, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | 2:07-CV-0074 |
| § | | |
| DERRICK JOHNSTON, § | | |
| JOE GRIMES, Warden, § | | |
| NFN SLOAN, Warden, § | | |
| K. SKINNER, and J. WINDHAM, § | | |
| § | | |
| Defendants. § | | |

**MEMORANDUM OPINION,
ORDER REVOKING PAUPER STATUS,
AND ORDER OF DISMISSAL**

Plaintiff RICHARD JAMES JOHNSON, acting pro se and while a prisoner incarcerated in the Texas Department of Criminal Justice, Institutional Division, has filed suit pursuant to Title 42, United States Code, section 1983 complaining against the above-referenced defendants. Although plaintiff has accumulated at least three "strikes" under the Prison Litigation Reform Act, he was allowed, because he alleged there was imminent danger of serious physical injury, to proceed in forma pauperis pursuant to the exception set forth in Title 28, United States Code, section 1915(g).

A hearing was conducted in the instant cause and in plaintiff's cause nos. 2:07-CV-0190 and 2:07-CV-0191 on June 30, 2009, at which time the Court examined plaintiff's claim of imminent danger at the time of filing this lawsuit and conducted a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). At the hearing, the Attorney General offered argument

concerning imminent danger and filed an amicus brief addressing the issue. Plaintiff filed a response on July 30, 2009.

**CLAIMS**

By his amended complaint, plaintiff claimed defendant JOHNSTON utilized excessive force against plaintiff on March 30, 2007, subjecting him to "a barrage of punches and kicks to the chest, stumic [sic], and groin" and "stomping" on his foot, leaving plaintiff "severely injured [sic]." By his questionnaire response, plaintiff further stated he received a disciplinary case concerning this incident and lost goodtime as a result. Plaintiff contends the disciplinary case was false and was written to cover up the alleged excessive use of force. Plaintiff claims defendant JOHNSTON placed plaintiff in pre-hearing detention in 11 Building in a cell without working lights, water from the sink, or toilet water, with droppings on the sink, toilet, and floor, and that the mattress had huge holes in it. He says other cells worked, but alleges JOHNSTON specifically chose the non-working cell for plaintiff. JOHNSTON ordered plaintiff stripped and placed in the cell naked and bare-foot without any sheets and told the officers not to feed him or give him anything. Plaintiff alleges he "was in this condition for 12 days[1]." Plaintiff says he received a preliminary examination by a nurse who ignored his complaints of injuries[2], that he did not get fed on defendant's shift for 5 days, and was not allowed to shower or groom for 8 days. During the hearing conducted in this cause, plaintiff complained of maltreatment for a "couple of days" and stated his inability to shower or groom was the result of his own refusal to come out of his cell because he was afraid of defendant JOHNSTON.

---

[1]Elsewhere plaintiff complained of ill-treatment for 8 days and, at the hearing, plaintiff testified to ill-treatment for a "couple of days."

[2]Nevertheless, at the hearing, plaintiff testified the nurse examining him asked him if he had any injuries and responded to his complaint that his toe had been stepped on by noting it was still healing from a partial toenail removal performed 2 weeks earlier.

2

Regarding the disciplinary charge which ultimately resulted in a loss of goodtime, plaintiff alleges it was false and filed to cover up the excessive use of force. Plaintiff says JOHNSTON told plaintiff that when he was released from pre-hearing detention in 11 Building and sent to back Bldg. 3, JOHNSTON would be waiting and that he was telling the other inmates plaintiff was the reason their cells were being searched – that plaintiff was "snitching them out."

Plaintiff claims GRIMES, SLOAN, SKINNER and WINDHAM (the UCC) ignored plaintiff's reports of life endangerment regarding defendant JOHNSTON. Plaintiff claims he is in imminent danger of serious physical injury.

## CREDIBILITY DETERMINATION

As set forth below, the Court finds plaintiff's allegation of imminent danger of serious physical injury to be not credible.

Just as issues such as personal jurisdiction, venue, and exhaustion of administrative grievances under 42 U.S.C. § 1997e(a), imminent danger of serious physical injury is another threshold issue which must be determined by a court and which calls for judicial resolution of factual issues without the participation of a jury. *See, e.g., Dillon v. Rogers*,[3] 596 F.3d 260 (5th Cir. 2010). Otherwise, an inmate who has amply demonstrated his willingness to abuse the judicial system, upon discovering the proper allegations, will be able to circumvent the 1915(g) imminent danger threshold, frustrating its application where needed most.

---

[3] In the aftermath of Hurricane Katrina, inmate was evacuated from Jefferson Parish Correctional Center to Jena temporary facility and then to Allen Correctional Center. Inmate claimed to have been ordered to kneel down for about a hour and told to "forget" about filing a grievance at the Jena temporary facility for abuse allegedly suffered there and, after transfer to Allen, was told by Captain Wheaton and inmate counsel Dennis Coleman "that he could not file an administrative grievance at Allen for abuse suffered at Jena. He also said he submitted several grievances at Allen requesting medical treatment for injury sustained at Jena and inquiring whether he was actually barred from filing grievances at Allen for abuse at Jena. Further, he said he gave a visiting lawyer a hand-written grievance to deliver to the Department of Public and Corrections.

## *SPEARS* HEARING

Plaintiff, after being sworn, testified, in part, that after the disciplinary case he was returned to Building 3 for a little while. Plaintiff testified he then pretended to have psychological problems in order to get into the PAMIO program and into housing away from the guards and inmates about whom he had complained in this cause and in cause nos. 2:07-CV-0190 and 2:07-CV-0191. Plaintiff said he didn't really need to be in PAMIO, but was there to be safe.

Sworn testimony was received from Assistant Warden Paul Sloan that the PAMIO program is a mental health treatment program unique to the Clements Unit. PAMIO is an acronym for "Program for the Aggressive Mentally Ill Offender." Although admission is voluntary, certain criteria must be met for admission, such as being at least a G5 (the most restrictive level of custody in general population) or an Administrative Segregation (complete lockdown) level inmate with a history of aggression, sexual misconduct, threats, and fights with other inmates and/or with staff. It is a medical treatment program for inmates who would not benefit from other mental health treatment available to inmates. Inmates are reviewed by mental health professionals to see if they meet the criteria before admission and are admitted, if it is determined to be appropriate.

The testimony at the hearing showed plaintiff was admitted into the PAMIO program subsequent to the alleged incident and was not housed around the same inmates or staff. Testimony further showed plaintiff had not claimed to have been harmed as a result of JOHNSTON's alleged statements at any point during the two years which have followed, and plaintiff could offer nothing more than supposition to support his contention that he would be reassigned to the same housing assignment at the Clements Unit upon discharge from PAMIO.

Although plaintiff alleges defendant JOHNSTON "pelted [him] with a barrage of punches and kicks to the chest, stumic [sic], [and] groin" and stepped on plaintiff's previously-injured foot[4], the testimony at the *Spears* hearing revealed that, upon the physical examination immediately after the alleged use of force, the only injury plaintiff complained of was his foot.

During the hearing, plaintiff was asked what injury he sustained as a result of the alleged excessive force by defendant JOHNSTON. He replied his toe was injured when JOHNSTON stomped on it.

Doctor Leeah was sworn and, reviewing plaintiff's uncontested medical records in open court, testified plaintiff's medical records showed he was seen in the infirmary on March 5, 2007 and scheduled for toenail removal because of an ingrown toenail.

Plaintiff did not challenge the accuracy or truthfulness of any of the records introduced during the hearing. On March 13, 2007, a partial toenail removal was performed. Plaintiff testified that, after the alleged March 30th assault by JOHNSTON, he was examined by a nurse who responded to his complaint of toe injury by noting his toe had already been injured before the assault, that is, he had undergone the previous toenail surgery.

Further, the sworn testimony of Dr. Leeah, reviewing, in open court, plaintiff's medical record for March 30, 2007, showed plaintiff was examined in the infirmary with no signs of trauma or injury, although it was noted he complained defendant JOHNSTON had stepped on his toe. The record showed that, on examination, the toe was, at best, equivocal for injury. This medical record does not support plaintiff's account of a "barrage of punches and kicks."

Plaintiff's testimony at the hearing concerning his physical exam after the alleged

---

[4]Plaintiff's amended complaint at typewritten page 6.

excessive force is inconsistent with the account contained in his Amended Complaint. At the hearing, plaintiff testified the nurse remarked that plaintiff's foot, or toe, had already been injured in that it was still healing from the partial removal of the toenail in treatment for ingrown toenail. In plaintiff's amended complaint at typewritten page 7, plaintiff alleges the nurse merely ignored his complaints, looked at him, smiled and remarked "they always state they have some injuries when they are being placed in PHD."

Plaintiff testified his complaint of life endangerment to the Unit Classification Committee was that defendant JOHNSTON had assaulted him and wrote a fabricated disciplinary case because of that assault and that he was in fear of his life because of defendant JOHNSTON's attack on him, his aggressiveness, and his retaliation "during couple of days while [plaintiff] was in PHD." Plaintiff conceded his written grievance concerning JOHNSTON was investigated, but argued his verbal complaint to the Unit Classification Committee (UCC) was not.

Testimony was received from a Sergeant Maes, the Safe Prisons Coordinator at the Clements Unit, that the results of life endangerment investigations were forwarded to the members of the UCC for consideration. The UCC, therefore, would have had before it the results of investigations of plaintiff's previous life endangerment complaints. Plaintiff stated he filed his grievance after the challenged UCC hearing. Plaintiff's account at the *Spears* hearing of the substance of his complaint to the UCC makes clear that he provided no facts in addition to those which were later investigated by Captain Gregory David, as set forth below.

An investigation into plaintiff's grievance/complaint of life endangerment from defendant JOHNSTON was performed by Captain Gregory David. The records of Captain David's investigation of plaintiff's grievance/life endangerment complaint were read by the Magistrate Judge in open court. The conclusion of the investigation was that there was no

evidence to support plaintiff's complaint that defendant JOHNSTON was telling other inmates plaintiff was a snitch nor was there anything to support plaintiff's overall claim of life endangerment relating to defendant JOHNSTON.

Plaintiff then argued to the Court that his lawsuit was about the failure of the UCC to investigate his statements about defendant JOHNSTON to the UCC. Thus, plaintiff narrowed his complaint to the UCC's response, not Captain David's investigation of his later grievance/complaint of life endangerment. The Court notes the UCC had before it the information resulting from the limited investigation possible on the disciplinary case, and the results of the April 3, 2007 disciplinary hearing on the charge arising from that incident. They were entitled to rely on this information, and the fact that they did so does not constitute deliberate indifference to plaintiff's safety.

## CONSENT

At the June 30, 2009 hearing conducted in this cause, plaintiff consented to proceed before a Magistrate Judge pursuant to Title 28, United States Code, section 636(c), and the instant cause was reassigned to the United States Magistrate Judge by Order issued July 1, 2009. A hearing was also conducted in each of plaintiff's other remaining cases, 2:07-CV-0190 and 2:07-CV-0191. At the hearing, plaintiff stated he was suing defendant JOHNSTON for continuous assaults and threats.

## THE LAW AND ANALYSIS

Review of the US party/case index reveals plaintiff has sued approximately sixty-five times in federal district court, thirty-six of which were civil rights lawsuits, at least nine of which

7

were dismissed as frivolous, malicious, or for failure to state a claim[5] and at least as many more of which were dismissed based on plaintiff's three-strikes status.

Plaintiff's previous designation as a litigant who has sustained three"strikes," triggered a bar to further civil proceedings in forma pauperis while a prisoner unless he alleges facts showing he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). For purposes of the § 1915(g) exception to the bar against proceeding in forma pauperis, imminent danger of serious physical injury is judged as of the date the complaint is filed. *Banos v. O'Guin*, 144 F.3d 883, 885 (5th Cir. 1998). In order to meet the imminent danger requirement of section 1915(g), the threat must be "real and proximate." *Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003). Allegations of past harm do not suffice; the harm must be imminent or occurring at the time that the complaint or notice of appeal is filed, and the exception refers to "a genuine emergency" where "time is pressing." *Heimerman v. Litscher,* 337 F.3d 781, 782 (7th Cir.2003). In passing the statute, Congress intended a safety valve to prevent impending harms, not those which had already occurred. *Abdul-Akbar v. McKelvie,* 239 F.3d 307, 315 (3rd Cir.2001). In *Abdul-Akbar*, the Third Circuit rejected the contention that allegations of having been sprayed with pepper spray, combined with a claim that prison officials engaged in "continuing harassment, plots to hurt or kill him, and other forms of retaliation," sufficiently alleged imminent danger.

Because allegations of past harm do not suffice to show imminent danger of serious physical injury, *Heimerman v. Litscher,* 337 F.3d 781, 782 (7th Cir.2003), plaintiff's eligibility to proceed under the subsection (g) exception to the three-strikes rule is based upon his

---

[5]See *Johnson et al., v. Lufkin Daily News*, et al., 9:01-CV-223 (E.D.Tex.); *Johnson v. Robinson, et al.*, 9:03-CV-47 (E.D.Tex.); *Johnson v. Harris Coumty, et al.*, 4:93-CV-309 (S.D.Tex.); *Johnson v. Cole*, et al., 6:95-CV-473 (E.D. Tex.); *Fowler, et al., v. Evans, et al.*, 6:95-CV-559 (E.D.Tex.); *Johnson v. TDCJ Board, et al.*, 1:03-CV-717 (W.D.Tex.); *Johnson v. Casasanta, et al.*, 2:95-CV-169 (N.D.Tex.); *Johnson v. Parks, et al.*, 5:03-CV-24 (N.D.Tex.); and *Johnson v. Bering, et al.*, 6:95-CV-472 (E.D.Tex.).

allegation that defendant JOHNSTON told other inmates in Building 3 plaintiff was the reason their cells were being searched and that JOHNSTON would be waiting for him when he was released from pre-hearing detention and returned to Building 3.

A plaintiff's *pro se* complaint must be read liberally, *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A court may dismiss a claim as factually frivolous only if the facts are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional. *Denton,* 504 U.S. at 33-34, 112 S.Ct. at 1733. Pleaded facts which are merely improbable or strange, however, are not frivolous for section 1915(d) purposes. *Id.; Ancar v. SARA Plasma, Inc.,* 964 F.2d 465, 468 (5th Cir.1992). Dismissal under 28 U.S.C. § 1915(d) may be made at any time before or after service of process and before or after an answer is filed. *Green v. McKaskle,* 788 F.2d 1116, 1119 (5th Cir .1986).

The purpose of a *Spears* hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. The court may make only limited credibility determinations in a *Spears* hearing, *Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir.1997) (citing *Cay v. Estelle,* 789 F.2d 318, 326-27 (5th Cir.1986), *overruled on other grounds by Denton v. Hernandez,* 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable." The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.

In *Denton*, the Supreme Court declined the invitation to reduce the "clearly baseless"

9

inquiry to a monolithic standard and "reject[ed] the notion that a court must accept as 'having an arguable basis in fact,' [citation omitted] all allegations that cannot be rebutted by judicially noticeable facts." *Denton v. Hernandez*, 504 U.S. at 32, 112 S.Ct. 1733. Credibility assessments are within the discretion of a district court examining frivolousness, but that discretion is limited to a determination of the inherent plausibility of a prisoner's allegations based on objective factors rather than demeanor or prior criminal record. *Cay v. Estelle*, 78 F.2d 318, 326-27 (5th Cir. 1986), *overruled on other grounds* by *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). The inherent improbability of the general facts alleged, together with the "lack of previous success in substantiating other claims," are factors the district court may consider in determinating the credibility of the allegations under scrutiny. *Id*. at 326. See, also, *Denton v. Hernandez*, 504 U.S. at 32, 112 S.Ct. 1733.

This lawsuit is not the first time for this plaintiff to lodge the type of allegations he now presents. The Court notes that this and every other allegation plaintiff makes against defendant JOHNSTON has been made by him in other lawsuits against other guards not only at the Clements Unit, but against guards at other TDCJ units, specifically, at the Smith Unit, where he presented allegations that the defendants were telling other prisoners plaintiff was a snitch (cause no. 5:03-CV-0024). Plaintiff also made similar allegations against another officer at the Clements Unit, alleging he wrote plaintiff false disciplinary cases putting plaintiff's life in danger (cause no 2:07-CV-0192). Plaintiff filed another case against still other defendants at the Clements Unit alleging they wrote him false disciplinary cases putting his life in danger (cause no. 2:07-CV-0193). At the Ferguson Unit, plaintiff filed suit alleging assaults by staff, being beaten and being placed in a dirty cell (cause no. H-01-CV-3811). At the Robertson Unit, plaintiff filed a lawsuit alleging he was beaten and assaulted by officers (cause no. 2:05-CV-

10

301).

In addition, plaintiff's allegations in this and his other Amarillo Division lawsuits are constantly shifting, to wit, "continuous assaults and threats," ill-treatment for 12 days, ill-treatment for 8 days, ill-treatment for a "couple of days."  Plaintiff's claim he was refused showers and grooming changed into testimony at the hearing that he, himself, refused to leave his cell for showers for several days because he was afraid of defendant JOHNSTON.  Further, at the hearing plaintiff did not challenge the accuracy of the records provided and he was afforded the opportunity for cross-examination.  Plaintiff's testimony of the medical examination and the unchallenged medical records do not support his allegations of an assault.

By his July 30, 2009 "Response & Rebuttal," plaintiff offers argument relating to the instant cause and argument relating to the two other Amarillo cases, 2:07-CV-0190 and 2:07-CV-0191.  Plaintiff contends other inmates have been refused protection despite evidence supporting their endangerment claims and that the defendants "carry out policies and practices that [place plaintiff's life in danger] and "inturprit [sic] the rules and investigations in such a way as to minimize the truth, to summarize events favorable to a predrawn [sic] conclusion that nothings [sic] wrong, they have came [sic] to broad assumptions and conclusions that can not be proven and make great leaps of faith in interprertating [sic] rules . . .."

Plaintiff's response does not cure the defects in his meeting the imminent danger of serious physical injury standard requisite in this suit, but, instead,  makes clear that his real complaint is that he does not agree with the investigative results of his complaints and the discretionary decisions of prison administrators in refusing to give him a unit transfer.

Plaintiff's allegations in the instant suit are simply a continuation of a long series of attempts to refine his allegations until he discovers the magic formula which will produce the

11

desired transfer to another unit.

Based on plaintiff's history as an abusive litigant, his history of repeated lawsuits containing these same or substantially similar allegations against other officers at the Clements Unit and at other TDCJ units, based on the changing nature of plaintiff's allegations in this lawsuit and in cause nos. 2:07-CV-0190 and 2:07-CV-0191, and based on the inconsistencies between plaintiff's allegations of excessive force, his failure to report any injury at the time but to his toe, as well as the lack of observable injuries, the Court FINDS plaintiff's claim of imminent danger of serious physical injury at the time suit was filed is not credible for purposes of the 1915(g) exception to the bar against further proceedings in forma pauperis by plaintiff.

The Court notes the unpublished Fifth Circuit case of *Lee v. Texas Department of Criminal Justice*, 2001 WL 822667, No. 00-11215 (5th Cir. June 28, 2001)(dismissal as frivolous but reversed because of a district court's unfavorable credibility determination at *Spears* hearing based on prison investigative report).

The credibility determination made in this cause, however, is distinguishable. The determination is not made based upon prison records disproving plaintiff's claims. Instead, and in accord with *Denton v. Hernandez*, it is based upon the ceaselessly shifting nature of plaintiff's allegations in a succession of pleadings and in response to questions from the Court, is further based upon plaintiff's previous unsuccessful and repeated attempts to maintain the same claims against other defendants, and upon plaintiff's demonstrated abuse of the court system in the past. Further the credibility determination in this cause goes not to the merits of plaintiff's case but instead goes <u>to the sole issue of plaintiff's claim of imminent danger</u>, a procedural matter which is in the domain of the Court and which is separate and independent from a determination of the merits of plaintiff's underlying claims.

12

Moreover, the Court notes that, although plaintiff has claimed an assault consisting of "a barrage of punches and kicks to the chest, stumic [sic], and groin" and "stomping" on his foot, all of which allegedly left plaintiff "severely injuried [sic]," the only injury plaintiff complained of to the nurse during the exam immediately following the use of force or to the Court during the hearing was an injury to his toe which had previously been the subject of a partial toenail removal. To the extent plaintiff presented these allegations of being pummeled in the chest, stomach, and groin to show imminent danger of serious physical injury, they are not credible.

Consequently, the facts of this case are clearly distinguishable from *Lee* in which there was a credibility determination based on a prison investigate report, at the *Spears* hearing stage, and which addressed the merits of the claims asserted by an inmate who had not suffered three strikes. The present credibility determination is based upon the factors set forth in *Denton v. Hernandez* and relate solely to plaintiff's claims of imminent danger of serious physical injury; the gateway through which plaintiff attempts to pass in order to avoid the three-strikes frivolous litigant bar against him because of his extensive history as an abusive litigant.

As to defendants GRIMES, SLOAN, SKINNER, and WINDHAM, while plaintiff complains of a biased investigation, these persons did not perform any of the investigations of plaintiff's life endangerment complaints. Moreover, uncontested testimony was received during the *Spears* hearing that the Unit Classification Committee's procedure is to rely upon the information before it from previous investigations of an inmate's life endangerment claims and, therefore, they are shielded by qualified immunity. Plaintiff has failed to allege any facts which would show they, or any one of them, knew of facts indicating plaintiff was in danger, and he has failed to show how their acts resulted in imminent danger of serious physical injury to him.

13

## CONCLUSION

For the reasons set forth above and pursuant to Title 28, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(a),

IT IS HEREBY ORDERED that the grant of PAUPER STATUS to plaintiff RICHARD JAMES JOHNSON be REVOKED and that the instant Civil Rights Complaint filed pursuant to Title 42, United States Code, section 1983 be DISMISSED FOR FAILURE TO PAY THE FILING FEE.

IT IS SO ORDERED.

ENTERED this 23rd day of September, 2010.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE